1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9  Theodore Washington,                  No. CV-95-2460-PHX-JAT

10                    Petitioner,         <u>DEATH PENALTY CASE</u>

11  v.

12  Charles L. Ryan,                      **ORDER**

13                    Respondent.

14

15        This matter is before the Court on limited remand from the Court of Appeals for

16  the Ninth Circuit to determine whether former federal habeas counsel, Assistant Federal

17  Public Defender Dale Baich, effectively abandoned Petitioner by filing an untimely

18  notice of appeal ("NOA").  The Court concludes that, although Baich acted negligently,

19  his conduct did not amount to abandonment.

20  **I.      BACKGROUND**

21        In 1987, a jury convicted Petitioner of first-degree murder, and the trial court

22  subsequently sentenced him to death.  Details of the crime are set forth in the Arizona

23  Supreme Court's opinion upholding the conviction and sentence.  *State v. Robinson*, 796

24  P.2d 853, 856–58 (Ariz. 1990).

25        Petitioner initiated these habeas proceedings in late 1995, and the Court appointed

26  John Trebon, Esq., as counsel.  At Trebon's request, the Court appointed the Federal

27  Public Defender ("FPD") as co-counsel.  Assistant FPD Baich entered his notice of

28  appearance on November 1, 1996, and subsequently "assumed primary responsibility" for

representing Petitioner.  (Docs. 11, 162-1.)  In May 1997, Petitioner filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 20.)  Following further amendment and other proceedings, the Court ultimately denied relief in April 2005.  (Doc. 115.)  On May 5, 2005, Petitioner filed a motion to alter judgment (Doc. 177), which the Court denied on June 8, 2005 (Doc. 118).  Thirty-three days later, on July 11, 2005, Petitioner filed a NOA and a motion for a certificate of appealability ("COA").  (Docs. 120, 121.)  The Court subsequently granted a COA with respect to certain claims.  (Doc. 122.)

On October 7, 2005, the Ninth Circuit ordered Petitioner to show cause why his appeal should not be dismissed as untimely pursuant to Rule 4 of the Federal Rules of Appellate Procedure.  Until the Ninth Circuit's order, Baich was unaware that the NOA had not been timely filed.  (Doc. 162-1).  One week later, Baich filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(1) to vacate and reenter judgment based on "excusable neglect" (Doc. 124), and obtained a stay from the Ninth Circuit pending this Court's ruling on the motion.  In a declaration appended to the motion, Baich's legal secretary explained that she had miscalculated the deadline for filing the NOA by beginning the 30-day count from the day *after* the Court issued its final order (June 9, 2005) rather than from the day the order issued.  (Doc. 124-2 at 2.)   Because July 9 fell on a Saturday, she calendared the NOA due date as Monday, July 11, 2005. (*Id.*)  On February 24, 2006, the Court denied post-judgment relief, concluding that Rule 60(b) could not be used to cure an untimely NOA.  (Doc. 130.)

Thereafter, Petitioner filed a response to the Ninth Circuit's order to show cause and a notice of appeal from this Court's denial of the Rule 60(b) motion to vacate.  (Doc. 131.)  In July 2006, the Ninth Circuit struck the parties' briefs, vacated this Court's order denying Rule 60(b) relief, and remanded for substitution of counsel and consideration of a properly-filed Rule 60(b) motion.  (Doc. 133.)   In October 2006, Petitioner, now represented by Gilbert Levy, Esq., filed a new motion to vacate judgment based on Rule 60(b)(1) and (b)(6).  (Doc. 139.)  In a declaration appended to the motion, Assistant FPD

1   Baich stated that he had instructed his assistant to calendar the due date for the NOA in
2   Petitioner's case, that he was counsel of record in thirteen other capital habeas cases at
3   the time, and that he also served as the supervisor for the FPD's capital habeas unit.
4   (Doc. 139-1 at 3.)  He further stated that he believed Petitioner's request for a COA had
5   to be filed simultaneously with the NOA, that the COA application was a substantive
6   pleading that he finished drafting on July 7, 2005, that he spent the next four days editing
7   the COA application for filing on the July 11 calendared due date, and that he could have
8   completed the COA application in time had he known or had reason to believe that the
9   NOA due date was actually July 8.  (*Id.* at 3–5.)

10      In March 2007, this Court again denied Rule 60(b) relief, and Petitioner filed
11   another notice of appeal.  (Docs. 146, 147.)  More than six years later, on September 26,
12   2013, the Ninth Circuit remanded "for the limited purpose of determining whether
13   Washington was effectively abandoned by his attorney" and directed this Court to hold
14   an evidentiary hearing and make findings within sixty days.  (Doc. 158.)

15      At a scheduling conference held October 2, 2013, the Court agreed to consider
16   supplemental briefs, existing records, and oral argument in lieu of conducting an
17   evidentiary hearing.  (Doc. 161.)  The parties thereafter filed supplemental briefs on the
18   issue of abandonment.   (Docs. 162, 164, 165.)   In a new declaration appended to
19   Petitioner's memorandum, Assistant FPD Baich stated that he did not independently
20   check the NOA due date calendared by his assistant or take any steps to verify that the
21   NOA was timely filed; that between June 8 and July 11, 2005, he logged 260.9 work
22   hours, almost 50% of which was on administrative matters; and that he "performed
23   substantive tasks in at least seven matters," including Petitioner's COA application.
24   (Doc. 162-1 at 2–4.)  The Court heard argument on November 20, 2013.

25   **II.   DISCUSSION**

26      Petitioner argues that his attorney abandoned him, and thus extraordinary
27   circumstances prevented him from filing a timely NOA.  (Doc. 162 at 15).  Petitioner
28   purports that several facts show abandonment, including that Baich: (1) filed an untimely

- 3 -

NOA; (2) waited until the last day of the miscalculated deadline to file the NOA; (3) was responsible for thirteen other death penalty cases at the time; (4) logged 260.9 hours the month prior to filing the NOA; (5) relied on an assistant to calculate the filing deadline; and (6) was uncertain whether a COA application needed to be filed concurrently with the NOA. (Doc. 162 at 15–16; Doc. 165 at 6.) He further asserts that the Court must take into consideration that this is a death penalty case in determining whether Baich's conduct was more than simple negligence. (Doc. 162 at 15.)

Respondent argues that Baich diligently and competently pursued habeas relief for Petitioner and continued this representation until the Court appointed new counsel at the order of the Ninth Circuit. (Doc. 164 at 7.) To show Baich's diligence and competence, Respondent points to the pleadings Baich filed, including a motion to conduct discovery, a motion to stay proceedings based on the state trial judge's alleged incapacity, and a memorandum on the merits of the claims. (*Id.* at 6–7.) Additionally, after the Court denied the petition, Baich filed a motion to alter the judgment, a NOA (albeit untimely by one court day), a COA application, and a Rule 60(b) motion after discovering that the NOA was untimely. (*Id.*) In Respondent's view, Baich's conduct amounts only to negligence, not abandonment. (*Id.* at 9.)

To qualify for Rule 60(b)(6) relief for an untimely NOA, a petitioner must show that extraordinary circumstances prevented the petitioner from prosecuting an appeal. *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012). "Such [extraordinary] circumstances will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (discussing that only truly extraordinary circumstances will cause a court to set aside a judgment for "any other reason" under Fed. R. Civ. P. 60(b)(6)). Ordinarily, a federal habeas petitioner is "bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the acts of the agent." *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012). However, an attorney's "virtual abandonment" of a client may constitute an extraordinary circumstance because "under agency principles, a client cannot be charged with the acts

1   or omissions of an attorney who has abandoned him."  *Maples v. Thomas*, 132 S. Ct. 912,

2   923 (2012).

3          Attorney abandonment has been addressed by the Supreme Court and Ninth

4   Circuit in several different contexts.  In *Maples*, the Court determined that abandonment

5   of a client in state postconviction proceedings may provide cause to excuse the

6   procedural default of federal habeas claims.  There, two attorneys from a large out-of-

7   state law firm represented the petitioner in state postconviction relief proceedings.

8   *Maples*, 132 S. Ct. at 918.  During the pendency of the petition, these attorneys accepted

9   new positions that precluded them from representing Maples, without informing their

10  client or seeking the state court's permission to withdraw as counsel of record.  *Id.* at 919.

11  In addition, no other attorney from the firm entered an appearance or moved to substitute

12  as counsel, and Maples believed that he was represented by counsel.  After the state court

13  denied postconviction relief, the court clerk sent notification to the attorneys' former

14  firm, which returned the mail as undeliverable.  *Id.* at 919–20.  As a result, Maples was

15  unaware of the denial, and the deadline for filing a notice of appeal expired.  *Id.* at 920.

16  Subsequently, a federal court found Maples' claims to be defaulted because he had failed

17  to appeal the state court's denial of postconviction relief.  *Id.* at 921.

18         In finding attorney abandonment as cause to excuse the state procedural default,

19  the Court distinguished a claim of attorney error, such as "miscalculating a filing

20  deadline," from a complete abandonment that severs the agency relationship and

21  terminates the attorney's authority to act for the client.  *Id.* at 923.  Relying on its

22  decision in *Holland v. Florida*, which involved an untimely habeas petition, the Court

23  observed that the petitioner there had not urged counsel's negligence in missing the filing

24  deadline as a basis for equitable tolling of the limitations period, but rather successfully

25  argued for tolling based on counsel's "near-total failure to communicate with petitioner

26  or to respond to petitioner's many inquiries and requests over a period of several years."

27  *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, ---, 130 S. Ct. 2549, 2568 (2010) (Alito, J.,

28  concurring in part and concurring in judgment)).   The Court then found similar

1    abandonment in Maples's case, based on counsel's severance of the agency relationship

2    by accepting positions that precluded continued representation of their client, failing to

3    observe court rules requiring permission to withdraw, and leaving Maples without the

4    right to personal notice of the court's ruling, given their status as counsel of record.   *Id.*

5    at 924–28.

6           Citing *Maples*, the Ninth Circuit in *Mackey v. Hoffman* held that a failure to timely

7    file a notice of appeal due to attorney abandonment may constitute extraordinary

8    circumstances justifying post-judgment relief under Rule 60(b)(6).   *Mackey*, 682 F.3d at

9    1253.  In that case, an attorney filed a timely habeas petition for the petitioner.  However,

10   after the respondent filed its response, the attorney did no further work on the case,

11   missed a traverse filing deadline, and wrote the petitioner to inform him that the court

12   would likely set a trial date and to request payment for services.  *Id.* at 1248.  When the

13   district court denied the petition, the attorney received notice of the judgment but failed

14   to notify the petitioner or file a notice of appeal.  *Id.* at 1248–49.  Eight months after the

15   denial, the petitioner wrote directly to the court because of concerns that a hearing had

16   not been set.  *Id.* at 1249.  In response to the court's inquiries, the attorney indicated that

17   he had been retained by the petitioner's parents but that they had stopped paying him.  *Id.*

18   Almost one year after the denial, the court discussed the possibility of vacating judgment

19   because the petitioner had been unaware of its ruling through no fault of his own, but

20   concluded it lacked authority to use Rule 60(b) as a means to reset the time for appeal.

21   *Id.* at 1250.

22          In deciding that the district court had discretion to grant relief under Rule 60(b)(6),

23   the Ninth Circuit noted several facts suggesting attorney abandonment, including that the

24   petitioner had been misled by his attorney, the petitioner believed his attorney was

25   continuing to represent him, and the attorney's failure to seek permission to withdraw as

26   counsel as required by court rule.  *Id.* at 1253.  As a result, the attorney deprived the

27   petitioner "of the opportunity to proceed *pro se* and to personally receive docket

28   notifications from the court."  *Id.*  On remand, the district court granted Rule 60(b) relief,

finding abandonment based on the attorney's failure to keep his client apprised of the status of the case, failure to inform the petitioner of the judgment denying the petition, and failure to seek permission from the court to withdraw as counsel of record. *Mackey v. Hoffman*, No. C-07-4189-SI, 2012 WL 4753512, at *1 (N.D. Cal. Oct. 4, 2012).

Finally, in *Towery v. Ryan*, the Ninth Circuit declined to equate an attorney's simple negligence with abandonment. There, the court-appointed federal habeas attorney filed a petition that raised eight constitutional claims. *Towery*, 673 F.3d at 938. However, the attorney inexplicably failed to raise a colorable constitutional claim that had been exhausted in state court. *Id.* After the court denied habeas relief, the petitioner filed a motion for Rule 60(b)(6) relief on the ground that habeas counsel had abandoned him by failing to raise the colorable claim. *Id.* at 939. In upholding the district court's denial of post-judgment relief, the Ninth Circuit observed that counsel did not refuse to represent his client, renounce the attorney-client relationship, cease serving as agent, or leave his client without any functioning attorney of record. Rather, counsel "diligently pursued habeas relief on Towery's behalf, although omitting a colorable constitutional claim." *Id.* at 942. The court concluded that "[a]t most, Towery alleges a claim of negligence, which falls far short of a claim of abandonment." *Id.* at 946–47.

Similar to *Towery*, the facts alleged here suggest mere negligence, not abandonment. Petitioner first contends that Baich's heavy caseload and administrative responsibilities caused him to wait until the last minute to file the NOA. However, attorneys regularly must balance time between cases and other tasks. Baich's hours logged and allocation of time do not establish that he failed to diligently pursue Petitioner's NOA. Furthermore, although Baich made an arguably unfounded assumption that the NOA and COA application had to be filed simultaneously, Baich stated that he had completed the COA application several days before the date he believed the NOA was due, but waited until the final day to file both documents. (Doc. 139-1 at 4-5.) Ultimately, the problem was not that Baich was overburdened, but that the deadline to file the NOA was miscalculated. Further, while waiting until the final day to

1    file a NOA is a questionable practice, it is one that is commonly utilized in capital cases.

2    *See generally Sheppard v. Early*, 168 F.3d 689, 693 (4th Cir. 1999) (observing that delay

3    in pursuit of direct and collateral review benefits capital defendants by postponing

4    imposition of sentence).  Regardless of the reason Baich waited until the final day, filing

5    on the deadline is not a lack of diligence so egregious that it constitutes virtual

6    abandonment of a client.  *See Moorman v. Schriro*, 672 F.3d 644, 647–48 (9th Cir. 2012)

7    (holding that the attorney's failure to gather additional evidence for mitigation claims

8    might be "serious negligence" but did not constitute abandonment).

9         Petitioner's arguments that Baich was incompetent are similarly unpersuasive.  To

10   support this argument Petitioner relies on three facts: (1) Baich delegated the calculation

11   of the filing deadline to a nonlawyer; (2) Baich did not check the accuracy of the

12   deadline; and (3) Baich presumed that a NOA and COA must be filed concurrently.

13   (Doc. 165 at 6).  First, the calendaring and calculation of a deadline does not require the

14   expertise and knowledge of a lawyer.  Because these tasks are administrative, Baich was

15   not necessarily negligent for delegating them to a nonlawyer.  *See* Model Rules of Prof'l

16   Conduct R. 5.3 cmt. 1.  In addition, the delegation actually may have allowed Baich more

17   time to focus on the essential legal aspects of the case.  *See Missouri v. Jenkins*, 491 U.S.

18   274, 288 n.10 (1989) (delegation of clerical tasks encourages cost-effective delivery of

19   legal services).  Although Baich did not ensure the accuracy of the date, this suggests

20   mere negligence, not inexcusable or gross neglect.  Thus, facts one and two, at most,

21   show that Baich's conduct leading to the filing of an untimely NOA was merely

22   negligent.  Fact three is irrelevant because Petitioner has not shown that Baich's

23   concurrent filing of the NOA and COA application somehow delayed filing of the NOA.

24   Indeed, as already noted, Baich had completed the COA application several days before

25   the NOA's due date.  As a result, solely the deadline miscalculation caused the untimely

26   NOA.

27        The compelling circumstances that led the courts in *Maples* and *Mackey* to find

28   attorney abandonment simply are not present in this case.  In *Mackey*, not only did the

attorney fail to communicate with his client, but he also affirmatively misled Mackey and stopped working on the case after filing the habeas petition.  Despite having no intention to continue the representation, the attorney failed to seek permission to withdraw as required by court rules.  Similarly, in *Maples*, the attorneys failed to communicate with their client and to withdraw as counsel of record.  Contrary to the attorneys' conduct in *Mackey* and *Maples* but similar to that in *Towery*, Baich diligently pursued habeas relief.  He filed several pleadings during the pendency of the petition and filed a motion to alter judgment after the court denied the petition.  Although untimely by one court day, Baich filed a NOA.  Also, unlike the attorney in *Mackey*, who received the denial of the habeas petition and failed to take any action, when Baich discovered the untimely NOA, he expeditiously filed a Rule 60(b) motion to set aside the judgment.  Simply put, Baich's conduct is not comparable to those attorneys who left clients "without any functioning attorney of record."[1]  *Maples*, 132 S. Ct. at 927.  At no time was the agency relationship between Baich and Petitioner severed.

Moreover, Baich's miscalculation of a filing deadline is precisely the type of error that *Holland* and *Maples* distinguished from abandonment.  Indeed, in *Lawrence v. Florida*, 549 U.S. 336–37 (2007), a capital case in which the petitioner missed the filing deadline for his habeas petition, the Court held that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."  *See also Rivas v. Fischer*, 687 F.3d 514, 539 (2d Cir. 2012) (finding failure to file timely state postconviction motion to be a "garden variety case of neglect" and not basis for equitable tolling of habeas limitations period); *Chavez v. Florida Dept. of Corrections*, 647 F.3d 1057, 1071 (11th

---

[1]     Although not addressed by either party, the Court notes that Petitioner was also represented by John Trebon, but that Trebon appears not to have had much involvement in the case once the FPD was appointed as co-counsel.   Trebon's representation was terminated simultaneously with that of the FPD in 2006.  (Doc. 134.)  Assuming without deciding that Trebon effectively abandoned Petitioner, such abandonment provides no basis for relief because Petitioner was not also abandoned by Baich, who from the outset of his appointment vigorously pursued habeas relief on Petitioner's behalf.  Thus, the instant case is distinguishable from *Maples*, where there was complete abandonment by all of the petitioner's attorneys.

Cir. 2011) (finding filing delay by capital postconviction attorney to be "garden variety negligence" and insufficient to equitably toll habeas limitations period).  If a deadline miscalculation is insufficient to provide extraordinary circumstances for tolling of the AEDPA limitations period, thus precluding *all* federal habeas review (even in a capital case), this Court can discern no basis for distinguishing miscalculation of a NOA deadline, precluding only appellate review.  To find other otherwise would eviscerate the Federal Rules of Appellate Procedure any time an attorney missed a deadline.  *See, e.g.*, *Lawrence*, 549 U.S. at 336 (observing that equitable tolling based solely on attorney miscalculation of limitations period would provide equitable tolling "for every person whose attorney missed a deadline"); *United States v. Locke*, 471 U.S. 84, 101 (1985) (observing that permitting 1-day late filings would lead to cascade of exceptions that would "engulf the rule erected by the filing deadline").  As a result, an attorney's miscalculation of a NOA deadline is insufficient to show egregious misconduct that constitutes abandonment.  Thus, Petitioner has demonstrated only simple negligence, not the complete abandonment and severance of agency relationship that is required under *Maples* and *Mackey*.

## III.    CONCLUSION

Petitioner relies on Baich's isolated error in filing an untimely notice of appeal to establish abandonment.    Although Petitioner attempts to convert this error into abandonment by alleging that Baich's lack of competence and diligence amounted to egregious misconduct, the facts do not support such a conclusion.  Accordingly, the Court finds that Baich's conduct did not amount to abandonment.

**IT IS SO ORDERED**.

/ / /

/ / /

/ / /

/ / /

/ /

1    **IT IS FURTHER ORDERED** that the Clerk of Court transmit a copy of this

2  Order to the Ninth Circuit Court of Appeals forthwith.

3    Dated this 25th day of November, 2013.

4

5    _____

6                          James A. Teilborg
                    Senior United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28